FILED
08/09/2017
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 21, 2017 Session

## STATE OF TENNESSEE v. ROY ALLEN CAREY

**Appeal from the Criminal Court for McMinn County**
No. 14-CR-36      Sandra Donaghy, Judge

_____

## No. E2016-01125-CCA-R3-CD

_____

Defendant, Roy Allen Carey, was convicted of hindering a secured creditor. He received an alternative sentence of two years' probation after serving ten days in incarceration. On appeal, he argues that (1) the evidence was insufficient to support his conviction; (2) the amended indictment was void; (3) the bill of particulars was insufficient; (4) the trial court committed error by not providing the requested jury instructions; and (5) the lack of notice as to the prohibited conduct violated his due process rights. After review, we find that the evidence was insufficient to support a conviction for hindering a secured creditor and that the trial court erred by not providing a jury instruction on the creation of a security interest. The judgment of the trial court is reversed and vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Vacated.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Andrew S. Cunnyngham, Chattanooga, Tennessee, for the appellant, Roy Allen Carey.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr Assistant Attorney General; Stephen D. Crump, District Attorney General; and Joseph V. Hoffer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

This matter invites this panel of the Criminal Court of Appeals to wander into an exercise that has the scent of a civil law maneuver. Defendant was employed by George Thomas, the owner of Cedar Grove Industries LLC ("Cedar Grove") in Decatur, Tennessee. During Defendant's employment at Cedar Grove, Mr. Thomas had a discussion with Defendant about loaning some money to Defendant for the purpose of obtaining reliable transportation to and from work. Mr. Thomas found a vehicle on Craigslist, called about the vehicle, and went to look at the vehicle with Defendant on June 6, 2013. The vehicle, a 2002 Honda Odyssey, was purchased for $2500. At the dealership, Mr. Thomas and Defendant dealt with a salesperson named Anthony Osborne. Mr. Thomas was listed as the lienholder on the Bill of Sale, a document titled Tennessee Department of Vehicle Services Division Multi-Purpose Application, and a document titled Statement of Title Held By Lienholder, Security Interest Holder or Leasing Company. All of those documents were signed by Defendant, but Defendant indicated on cross-examination that he did not understand that Mr. Thomas would have a lien on the vehicle at the time he signed those documents.

According to Mr. Thomas's testimony, he and Defendant executed a promissory note pertaining to the loan to purchase the Honda Odyssey on June 7, 2013. The promissory note for $2800 was dated June 6, 2013, and signed by Defendant and Mr. Thomas. The signatures were witnessed by Sandra Hood. Mr. Thomas testified that the total amount of the promissory note was $2800 because it encompassed both the $2500 loan to obtain the vehicle and $300 in outstanding debt that Defendant owed Mr. Thomas. The loan was to be repaid to Mr. Thomas via payroll deductions of $100 per month. The promissory note stated that the "Note" was secured by a 2002 Honda Odyssey and listed a VIN number. The promissory note further stated that if Defendant defaulted, the Honda Odyssey "will be immediately provided to George Thomas and George Thomas is granted all rights of repossession as a secured party, and may immediately take possession of Security without recourse." It also contained a provision which required Defendant to "maintain in good standing at all times until note is paid in full, full comprehensive insurance on said vehicle with George Thomas listed as Loss Payee." With regard to the title of the Honda Odyssey, the promissory note provided that "George Thomas will be listed as a lender on the title of the Security whether or not George Thomas elects to perfect his security interest in the Security." Additionally, it provided that Defendant "grants to George Thomas a Security interest in the Security until this Note is paid in full." Mr. Thomas testified that it was his understanding that Defendant "would register the car with [Mr. Thomas] as lienholder and also carry full insurance on the car until the note was paid in full."

On July 18, 2013, Defendant executed a Title Pledge Agreement and Disclosure/Receipt with Tennessee Title Loans, Inc. Defendant received a loan of $2000, and the "Item Pledged" was the 2002 Honda Odyssey purchased on June 6, 2013. At the time that Defendant went to Tennessee Title Loans, Inc., he had an "open title" to the vehicle because the vehicle had not been registered to Defendant. In order to get a loan

from Tennessee Title Loans, Inc., he registered the vehicle at the Meigs County Clerk's Office.

Janie Meyers, the Meigs County Clerk, testified that her office examined each title to determine if there was a lienholder on a particular vehicle. She indicated that if there was no lienholder information on the title, then it would be safe to assume that there was not a lien on the vehicle. There were two Official Vehicle Registration forms signed by Defendant on July 19, 2013. One did not indicate a lienholder; the second listed Tennessee Title Loans, Inc., as the first lienholder on the 2002 Honda Odyssey. Ms. Meyers did not explain precisely why there were two forms, but she said that it might be due to Defendant indicating that there was a lien after the form was filled out or the Clerk's Office discovering an unmentioned lien. She explained that the back of the title lists the transfers of the vehicle, and when the back is full, as was the case for the title to the 2002 Honda Odyssey, an Extension of Title form is used to document further transfers of title. She indicated that the title to the vehicle and the extension were all that Defendant would need to register his vehicle. Ms. Meyers further testified that the only way to properly encumber a vehicle in Meigs County would be to register it with the County Clerk's Office. After Defendant registered the vehicle with the Meigs County Clerk's Office, the title to the vehicle was mailed directly from the State of Tennessee to Tennessee Title Loans, Inc. This title listed Tennessee Title Loans, Inc., as the first lienholder on the vehicle.

With regard to the promissory note between Defendant and Mr. Thomas, Defendant testified that he actually signed it on August 22, 2013, and that Ms. Hood witnessed it on the same day. After Defendant signed the promissory note, Mr. Thomas handed the Defendant a demand letter for the vehicle and a letter of termination. Misty Carey, Defendant's wife, testified that Defendant had no paperwork with him when he entered Mr. Thomas's house on the day that the vehicle was seized by Mr. Thomas. However, when he exited the house he had a promissory note and a letter of termination.

Sandra Hood, the person who witnessed the signatures on the promissory note, testified that the promissory note was signed on the same day as Defendant's termination from Cedar Grove. However, Ms. Hood also testified that she did not think that she witnessed the promissory note on the same day that Defendant's vehicle was taken away. She was unable to specifically testify that the promissory note was signed on June 6, 2013, but remembered that is was a Friday because "it was a payday." When asked to verify or confirm that June 6, 2013, was the day that Ms. Hood witnessed the promissory note, she responded, "I would think it would be that date, because that's the day I signed it." When further questioned if she would have corrected the date if it were wrong, Ms. Hood said, "Yes, I think I would have." The demand letter from Mr. Thomas to Defendant states that the Promissory Note was signed on June 6, 2013.

Mr. Thomas terminated Defendant because he "became aware of the fact that [Defendant] did not follow through with securing me as lienholder on the vehicle." Mr. Thomas discovered that he was not listed as a lienholder on the vehicle when he called the courthouse in Decatur, Tennessee, to determine what steps were necessary to repossess the 2002 Honda Odyssey. At that time, he was informed that he did not have a lien on the vehicle. That same day, Mr. Thomas provided Defendant with a demand letter which stated that Defendant was in default according to the terms of the promissory note, that the insurance coverage on the 2002 Honda Odyssey had lapsed, and that Mr. Thomas demanded that Defendant "relinquish this vehicle to me immediately upon receipt of this notice until the terms of the Note are met." Defendant testified at trial that AllState had told him that "your insurance is still good until September 8th, because when you opened the policy you paid for two months." However, a document from AllState that was entered into evidence shows the termination date of the policy to be August 8, 2013.

Mr. Thomas decided to repossess the 2002 Honda Odyssey and return the vehicle to the dealership from which it was purchased. According to Mr. Thomas, he demanded Defendant return the vehicle, the Defendant voluntarily returned it to him, and Mr. Thomas took the vehicle back to the dealership. According to the Defendant, the vehicle was repossessed when Mr. Thomas told him, "Get your shit out of that van. Get your family out of that van. I'm taking it now," and Mr. Thomas's brother parked a tractor behind the vehicle. After Mr. Thomas repossessed the vehicle, he received no further payments from Defendant. Mr. Thomas tried to obtain title on the 2002 Honda Odyssey, but he was denied title because Tennessee Title Loan, Inc., held a lien on the vehicle. Mr. Thomas testified that he had not given Defendant permission to obtain another lien on the vehicle.

At some point, Mr. Thomas spoke with Janie Meyers at the Meigs County Clerk's Office, and he spoke to the dealership from which the automobile came. Mr. Thomas testified, "I had lost my security interests, and I decided in working with the dealer that the best thing to do was to return the car to them, because . . . we thought at that time that it was a mistake that they made that caused the problem." After repossessing the vehicle, Mr. Thomas took the vehicle back to the dealership. He testified that he had an "agreement" with the dealership whereby they would "reimburse" him from the money that they received for the vehicle, but he was never reimbursed. Shawn Allen, the Area Manager for Tennessee Title Loans, Inc., was also in contact with the dealership that had possession of the vehicle in his attempt to recover the vehicle as collateral for the loan from Tennessee Title Loans, Inc. Melissa Williams, the proprietor of Wholesale Auto Group, would not relinquish the vehicle to Tennessee Title Loans, Inc., because she claimed that she was supposed to be the lienholder. Eventually, Mr. Allen and Ms. Williams reached an agreement to sell the vehicle and split the proceeds.

Defendant was originally indicted for fraudulent transfer of a motor vehicle, but the indictment was amended by an agreed order to change the charge to hindering a secured creditor. Defendant moved for a bill of particulars, and the State filed a bill of particulars further describing the charge against Defendant.

Prior to trial and at the close of proof, Defendant requested jury instructions regarding the formation of a contract and applicable defenses as well as the creation of an enforceable security interest. The State "vehemently" objected to "any kind of civil jury instruction." The trial court denied Defendant's requests. Before closing arguments, the trial court instructed the jury about security interests by saying, "Security interest means an interest in personal property of [sic] fixtures that secures payment or performance of an obligation. Lien means a charge or security or encumbrance upon property." Following deliberations, the jury found Defendant guilty of hindering a secured creditor.

*Analysis*

On appeal, Defendant argues that the amended indictment is void because its vagueness and conclusory language failed to provide adequate factual notice of criminal conduct. He argues that the Bill of Particulars was insufficient because it did not identify the form of hindering alleged against Defendant and did not identify the location of the alleged offense. Defendant also claims that there was insufficient evidence to support the verdict of hindering a secured creditor. Additionally, he argues that the trial court's refusal to provide requested jury instructions violated Defendant's right to have the jury instructed upon all the issues of law raised by the proof at trial and that the lack of notice as to the conduct prohibited by the statute violated the Defendant's due process rights.[1] The State disagrees.

*I. Sufficiency of the Indictment*

Defendant argues that the amended indictment is void due to vagueness and its use of conclusory language. Specifically, Defendant contends that the amended indictment did not provide sufficient facts upon which to fix a judgment or to give notice to Defendant.

The United States and the Tennessee Constitutions require that an indictment inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. An indictment satisfies this constitutional requirement "if it provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper

---

[1] Defendant's initial brief claimed that the trial court committed reversible error by not declaring a mistrial upon the prosecutor introducing evidence of payments to Defendant's wife's criminal defense attorney. In Defendant's reply brief, Defendant withdrew that issue from review.

judgment, and (3) to protect the accused from double jeopardy." *State v. Duncan*, 505 S.W.3d 480, 484-85 (Tenn. 2016) (quoting *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997)). Generally, an indictment must allege the material elements of the offense and give adequate notice to the accused. *Hill*, 954 S.W.2d at 729. The validity of an indictment is a question of law and, therefore, our review is de novo. *Id.*

The amended indictment in this case states the following:

> THE GRAND JURORS of McMinn County, Tennessee, duly impaneled and sworn, upon their oath present that
>
> ROY ALLEN CAREY
>
> On or about the 18th day of July, 2013, in McMinn County, Tennessee, and before the finding of this indictment, did unlawfully, intentionally or knowingly claim ownership or interest of certain property which was the subject of a security interest, security agreement, deed of trust, mortgage, attachment, judgment or other statutory or equitable lien held by George Thomas, to-wit: a 2002 Honda Odyssey, and did unlawfully and with the intent to hinder enforcement of that interest remove, conceal, encumber, transfer or otherwise harm or reduce the value of the property, without the effective consent of George Thomas, in violation of T.C.A. 39-14-116, all of which is against the peace and dignity of the State of Tennessee.

The indictment satisfies the requirements under the United States and Tennessee Constitution. First, it sets forth the material elements of hindering a secured creditor under Tennessee Code Annotated section 39-14-116 by stating that Defendant claimed ownership in the vehicle that was subject to a security interest, hindered the enforcement of the security interest, and had the requisite intent. Next, the indictment sets forth factual allegations of the year, make, and model of the vehicle, the holder of the security interest, the date on which the alleged crime occurred, and the county in which it was alleged that the crime occurred. This information was enough to give Defendant adequate notice that an action that affected the value of the 2002 Honda Odyssey, such as obtaining a second lien on the vehicle, taken by Defendant on July 18, 2013, was allegedly criminal. By setting forth the material elements and providing adequate notice, the indictment enabled Defendant to know the accusation to which answer was required, furnished the court with adequate basis for entry of proper judgment, and protected Defendant from double jeopardy. We conclude that the indictment was sufficient.

## *II. Sufficiency of the Bill of Particulars*

Next, Defendant argues that the bill of particulars provided to Defendant was not sufficient to meet the purposes for which it was required by the trial court and Article I,

section 9 of the Tennessee Constitution. Defendant argues that the insufficiency results from the failure to identify the location of the alleged offense and the failure to identify the type of hindrance that the Defendant allegedly committed. Further, he contends that the evidence at trial fatally varied from the bill of particulars.

Article 1, section 9 of the Tennessee Constitution provides "[t]hat in all criminal prosecutions, the accused hath the right to . . . demand the nature and cause of the accusation against him, and to have a copy thereof . . ." The Tennessee Rules of Criminal Procedure provide a method by which a defendant may make such a demand. "On defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to adequately identify the offense charged." Tenn. R. Crim. P. 7(c). A bill of particulars serves three purposes: it provides a "defendant with information about the details of the charge against him if this is necessary to the preparation of his defense;" it assures that a defendant has an opportunity to "avoid prejudicial surprise at trial;" and it enables the defendant to preserve a plea against double jeopardy. *State v. Sherman*, 266 S.W. 3d 395, 408-09 (Tenn. 2008) (internal citations omitted); *see also State v. Speck*, 944 S.W.2d 598, 600 (Tenn. 1997). A bill of particulars is not a discovery device and is limited to information a defendant needs to prepare a defense to the charges. Tenn. R. Crim. P. 7(c), Advisory Comm'n Cmts.

The trial court should make every effort to ensure that the State supplies all critical information in its bill of particulars, but lack of specificity will not result in reversible error unless a defendant can prove prejudice. *Sherman*, 266 S.W. 3d at 409 (citing *Speck*, 944 S.W.2d at 601; *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991)). When there is a variance between a bill of particulars and the proof at trial, it "is not fatal unless it is both material and prejudicial." *State v. Shropshire*, 45 S.W. 3d 64, 71 (Tenn. Crim. App. 2000).

In this case, the bill of particulars prepared by the State consisted of the following text:

> That on or about June 6, 2013, the defendant borrowed $2,500.00 from the victim, George Thomas. In order to mislead the victim into loaning those funds, the defendant executed Bill of Sale, a Tennessee Multi Purpose Application and a Statement of Title in favor of victim, George Thomas. Then, the defendant filed the title application without the proper documentation so that the vehicle title would not reflect the lien of George Thomas. After that, the defendant applied for an [sic] received a title loan on the vehicle based on the title that he fraudulently obtained. Then, the defendant failed to pay on that loan.

This text, while not extensive, provided Defendant information in addition to that contained in the indictment. The bill of particulars informed him that the pertinent

actions which he should investigate and for which he should prepare a defense were his actions surrounding the purchase of the vehicle and the obtaining of a title loan for which he used the vehicle as collateral. This information about the "title loan" in conjunction with the information regarding an "encumbrance" contained in the indictment provided Defendant with the details of the charge against him that would aid in his preparation of a defense. Further, this information also prevented a prejudicial surprise at trial and enabled the defendant to preserve a plea against double jeopardy.

Defendant also argues that there was a fatal variance between the bill of particulars and the proof at trial. At trial, there was no indication that Defendant fraudulently obtained title to the vehicle as alleged in the bill of particulars, but rather, an employee of the car dealership committed the mistake that led to Mr. Thomas not being listed as a lienholder on the title. While we recognize that there was a variance between the evidence at trial and the bill of particulars, Defendant has failed to point to any prejudice that resulted from the variance. A variance alone will not be fatal to a bill of particulars. *Id.*

Therefore, we find that the bill of particulars in this case was sufficient because it provided Defendant with information about the nature and cause of the accusation against him, and even though a variance existed between the bill of particulars and the proof at trial, Defendant has failed to show that he was prejudiced.

### III. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence for his conviction for hindering a secured creditor. He argues that the State failed to prove that an enforceable security interest existed at the time that he obtained a second lien on the vehicle. Further, he argues that he did not possess the requisite intent to violate Tennessee Code Annotated Section 39-14-116(a) and that the facts established at trial present a matter that is better suited for resolution in a civil proceeding.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the

proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

The crime of hindering a secured creditor occurs when "[a] person who claims ownership of or interest in any property which is the subject of a security interest, security agreement, . . . or other statutory or equitable lien . . . , with intent to hinder enforcement of that interest or lien, destroys, removes, conceals, encumbers, transfers, or otherwise harms or reduces the value of the property." T.C.A. § 39-14-116(a).

Defendant argues that the State failed to prove that an enforceable security interest was held by Mr. Thomas at the time the Defendant obtained a second lien on the vehicle. While there was conflicting testimony in the trial record about the date upon which the promissory note was signed, this Court does not analyze the credibility of trial testimony. Rather, that is a function of the trier of fact. The promissory note is dated June 6, 2013, and multiple exhibits either refer to the promissory note being signed on June 6, 2013, or list Mr. Thomas as a lienholder. Additionally, Mr. Thomas testified that the promissory note was actually signed on June 7, 2013, but was back dated to June 6, 2013, and Ms. Hood indicated at trial that she would have changed the date on the promissory note had it been wrong when she witnessed the signatures. Based upon this evidence in the record, a rational trier of fact could have accredited the testimony of Mr. Thomas and Ms. Hood and found beyond a reasonable doubt that a security interest existed when Defendant obtained a second lien on the vehicle on July 18, 2013.

Defendant further contends that the State failed to prove that he possessed the requisite mental state to hinder a secured creditor under Tennessee Code Annotated section 39-14-116(a). The text of the statute requires a Defendant to possess "the intent to hinder enforcement of that interest or lien" at the time the hindering act is committed. T.C.A. § 39-14-116(a). This intent requirement is the only thing that separates criminal liability from civil liability when a person takes out a second loan using the same piece of property as collateral for both loans. *Cf. Ashworth v. State*, 477 S.W.2d 224, 226-27 (Tenn. Crim. App. 1971) (holding that Tennessee Code Annotated § 39-1957, the predecessor to § 39-14-116, did not punish the creation of a debt but rather the fraudulent act of selling a vehicle that the defendant knew was subject to a security interest). While Defendant argues that the facts of this case make a civil forum more appropriate, the requisite intent can make the actions in this case criminal. Thus, the proper inquiry here

is whether a rational juror could find beyond a reasonable doubt that Defendant possessed the intent to hinder Mr. Thomas from enforcing his security interest at the time that he obtained a second lien on the vehicle from Tennessee Title Loans, Inc.

The record contains no direct evidence of the Defendant's intent, but the State argues that the circumstantial evidence in this case is enough for a rational juror to find beyond a reasonable doubt that Defendant had the requisite intent. The State argues that Defendant knew that Mr. Thomas was a lienholder on the vehicle because Defendant had Mr. Thomas added as lienholder on the documents pertaining to the ownership or transfer of the vehicle and agreed to list Mr. Thomas as a lienholder on the title in the promissory note. The State argues that a rational juror could infer Defendant's intent to hinder enforcement of Mr. Thomas's security interest from this knowledge of the prior lien at the time Defendant obtained the second lien. Further, the State argues that Defendant's intent to hinder Mr. Thomas can be derived from his failure to disclose Mr. Thomas's lien to Tennessee Title Loans, Inc., or the Meigs County Clerk's Office and from his failure to notify Mr. Thomas that he was taking out a second lien on the vehicle. The State argues that the jury could infer that Defendant wanted to present a clear title to Tennessee Title Loans, Inc., and that Defendant agreed to grant them a security interest even though he knew that Mr. Thomas had a prior interest in the vehicle. However, we disagree that the proof supports this inference.

Many prior cases from this Court involving sufficiency of the evidence for hindering a secured creditor are factually distinguishable from this case. In *State v. William "Bill" E. Bolinger*, the defendant was loaned a sum of money from a bank and used two cars and some business equipment as collateral. No. E2008-01777-CCA-R3-CD, 2009 WL 1507676, at *2-4, (Tenn. Crim. App. May 29, 2009), *no perm. app. filed*. After failing to make payments on the loan, the defendant returned one of the cars to the bank but made conflicting statements about the whereabouts of the second car. *Id.* at *1-2. This Court held that there was sufficient evidence to support a conviction for hindering a secured creditor because "the defendant did more than lie to the bank and the police about the car's location" and actually attempted to sell the car while the bank was attempting to repossess it. *Id.* at *4. In *State v. Daniel Paul Batchelor*, this Court also found sufficient evidence to support a conviction for hindering a secured creditor where the defendant was notified that the collateral was going to be repossessed and then damaged the collateral during the repossession process. No. E2000-02264-CCA-R3-CD, 2001 WL 1089768, at *1-4, (Tenn. Crim. App. Sept. 18, 2001), *no perm. app. filed*. In *Ashworth*, this Court upheld convictions where the defendants were involved in a fraudulent scheme whereby a bank employee would purchase a vehicle from a car dealer using a loan from the bank, then return the car to be sold to a third party without recording the bank's lien on the title. 477 S.W.2d at 225-226.

In each of these prior cases, there were facts in addition to the defendants' knowledge of a prior lien on the collateral to support a rational inference of intent. *See*

*William "Bill" E. Bolinger*, 2009 WL 1507676 at \*2; *Daniel Paul Batchelor*, 2001 WL 1089769 at \*1-2; *Ashworth*, 477 S.W.2d at 225-26. Here, there are no additional facts to support an inference of intent. Mr. Thomas was not engaged in the act of repossessing the vehicle at the time Defendant obtained the loan from Tennessee Title Loans, Inc. Though Defendant was not forthcoming about Mr. Thomas's lien to Tennessee Title Loans, Inc., or the Meigs County Clerk's Office, there is no indication that Defendant was involved in a fraudulent scheme to prevent Mr. Thomas from repossessing the collateral or receiving payment on the loan. In fact, the testimony at trial indicated that funds were being withheld from Defendant's paycheck as repayment of Mr. Thomas's loan up until Defendant's termination and receipt of the demand letter on August 22, 2013.

From the evidence presented by the State, a rational juror could only find beyond a reasonable doubt that Defendant knowingly obtained a second lien on the vehicle. Under Tennessee Code Annotated section 39-14-116, this does not constitute a crime because the statute explicitly requires "intent to hinder enforcement." T.C.A. § 39-14-116(a). If mere knowledge of a prior lien was all that it took to violate section 39-14-116, then every person who knowingly obtained a second mortgage on their home or a second lien on their vehicle would be a criminal. Such an interpretation cannot be derived from the ordinary meaning of the statutory language and would certainly yield an absurd result. *See State v. Fleming*, 19 S.W.3d 195, 197 (Tenn. 2000); *State v. Butler*, 980 S.W.2d 359, 362 (Tenn. 1998). Accordingly, we find the evidence to be insufficient to support Defendant's conviction of hindering a secured creditor. While we find the evidence to be insufficient, we have chosen to analyze the other issues raised on appeal in case further litigation arises.

## *IV. Request to File Written Jury Instructions*

Defendant also argues that the trial court committed reversible error by requiring Defendant to submit written jury instructions prior to trial. Rule 30 of the Tennessee Rules of Criminal Procedure states that "any party may file written requests" for jury instructions "[a]t the close of evidence or at such earlier time during the trial as the court reasonably directs." Rule 30 of the Tennessee Rules of Criminal Procedure contains permissive language, as indicated by its used of the word "may." However, this rule does not limit the trial judge's ability to request jury instructions at a time prior to trial so long as the defendant still has the opportunity to submit jury instructions during the trial or at the close of proof, as enumerated in Rule 30. In this case, Defendant was allowed to argue for his requested for jury instruction at the close of evidence, and the trial court considered his request. Therefore, the trial court did not err by requesting jury instructions prior to the trial.

## *V. Adequacy of Jury Instructions*

Next, Defendant argues that the trial court's refusal to provide jury instructions related to contract formation and applicable defenses as well as the creation of an enforceable security interest was reversible error. He contends that jury instructions regarding the formation of a security interest under the Uniform Commercial Code as adopted by the State of Tennessee in Tennessee Code Annotated section 47-9-203 were necessary for the jury to be given a complete charge of the applicable law.

A defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *see State v. Leath*, 461 S.W.3d 73, 105 (Tenn. Crim. App. 2013). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). A jury instruction is considered "prejudicially erroneous," only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id*. Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

When instructing the jury, the trial court stated the following:

For you to find the Defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: (1) That the Defendant claimed ownership of or interest in property, a 2002 Honda Odyssey, which was subject to a security interest or security agreement; and (2) That the Defendant encumbered, transferred, harmed or reduced the value of the said property; and (3) That the Defendant did so with intent to hinder enforcement of the security interest or lien. [2]

The trial court went on to instruct the jury that "[s]ecurity interest means an interest in personal property of [sic] fixtures that secures payment or performance of an obligation." In the instruction given by the trial court, the existence of a security interest is required for the first element of the crime to be met. The trial court defined a security interest pursuant to the language contained in Tennessee Code Annotated section 39-14-116(b)(2), but the trial court did not instruct the jury as to the creation of a security interest.

The legal concept of attachment is the process by which a person creates an enforceable interest in property, and attachment occurs at the instant an enforceable security interest is created. *AmSouth Bank v. Trailer Source, Inc.*, 206 S.W.3d 425, 435

---

[2] See Tennessee Pattern Jury Instruction, T.P.I. Crim. 11.07.

(Tenn. Ct. App. 2006); *see also* T.C.A. § 47-9-203. In order for an enforceable security interest to exist and for Mr. Thomas to possess anything for Defendant to hinder, the requirements of Tennessee Code Annotated section 47-9-203 must be met. Those requirements are that (1) value be given; (2) the debtor has right or power to transfer rights in the collateral; and (3) a security agreement plus satisfaction of an evidentiary requirement. T.C.A. § 47-9-203. The advisory comments to the Uniform Commercial Code, as adopted by Tennessee, refer to those requirements as "basic prerequisites to the existence of a security interest." T.C.A. § 47-9-203 cmt. 2. By failing to instruct the jury as to the creation of a security interest, the trial court failed to instruct the jury on how to determine the existence of the very thing that Defendant was accused of hindering. Thus, the trial court failed to fairly submit the legal issue of the existence of a security interest to jury and committed a prejudicial error.

With regard to Defendant's argument that the trial court erred by not giving instructions on contractual formation, specifically the requirement of consideration in order to form a contract, we find that the jury instructions did not need to contain an instruction regarding consideration in order to fairly submit the legal issues to the jury. If the jury had been instructed as to the creation of a security interest, which requires that value be given, then an instruction regarding consideration would have been redundant. The trial court did not err in refusing to grant Defendant's request for an instruction on consideration.

With regard to Defendant's argument that the jury should have been instructed on the contractual defenses of fraud and duress, we find that the jury instructions did not need to contain such an instruction to fairly submit the legal issues to the jury in this case. Defendant argues that fraud or duress occurred when he signed the promissory note on August 22, 2013, and was subsequently fired. However, the critical date for the existence of the security interest was July 18, 2013, the date that Defendant obtained the second lien from Tennessee Title Loans, Inc. Even if the jury believed Defendant's claims that he signed the promissory note as a result of fraud or duress on August 22, 2013, the fraud or duress would be inconsequential because, if it were true that the promissory note was signed on August 22, 2013, no security interest would have existed on July 18, 2013. Thus, the trial court did not err in refusing to grant Defendant's request for an instruction on the contractual defenses of fraud or duress because the issues at trial would have been fairly submitted to the jury if a proper instruction on the creation of a security interest had been given.

The proper remedy for a jury instruction error is a reversal of the conviction and a remand for a new trial. *State v. Thorton*, 10 S.W.3d 229, 242 (Tenn. Crim. App. 1999) *no perm. app. filed.* However, the judgment of the trial court is being vacated for insufficiency of the evidence. Thus, the case will not be remanded.

*VI. Due Process*

Defendant also argues that the prosecution of the case against him violated his due process rights because he did not know and could not have known that acquiring a second loan that used the vehicle as collateral would have violated Tennessee Code Annotated section 39-14-116. As stated above, section 39-14-116 does not criminalize the act of obtaining a second lien on a piece of property. It criminalizes doing so with the intent to hinder a secured creditor. Due process only requires the State to provide fair notice to its citizens of prohibited conduct and potential consequences flowing form such conduct. *State v. Smith*, 48 S.W.3d 159,164 (Tenn. Crim. App. 2000) (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)). One purpose of the codification of a criminal offense is to provide such a warning. *Id.* (citing *State v. Boyd*, 925 S.W.2d 237, 242 (Tenn. Crim. App. 1995)). Tennessee Code Annotated section 39-14-116 clearly sets forth the offense of hindering a secured creditor and provided fair notice to Defendant, as a citizen, of the conduct prohibited by the statute.

*Conclusion*

Because there was insufficient evidence that Defendant possessed the requisite intent to hinder the enforcement of a secured interest, we reverse the judgment of the criminal court and vacate Defendant's conviction.

_____
TIMOTHY L. EASTER, JUDGE